# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **DAVID SAYLORS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.** _____ |
| | ) | |
| **GAILON HODGES** | ) | **JURY DEMAND** |
| | ) | |
| **individual capacity** | ) | |
| | ) | |
| **Defendant** | ) | |

## COMPLAINT

COMES NOW the Plaintiff, **DAVID SAYLORS** (hereinafter "Plaintiff"), by and through counsel, and files his Complaint against the Defendant **GAILON HODGES** (hereinafter "Defendant") in his individual capacity  seeking relief and redress under 42 U.S.C. § 1983, which authorizes action to redress the deprivation, under color of state law, of rights, privileges, or immunities secured to Plaintiff by the Fourth Amendment to the Constitution or laws of the United States of America.

### PARTIES

1.      The Plaintiff, David Saylors, (hereinafter referred to as Plaintiff) is an adult resident and citizen of Sumner County, Tennessee, residing in Gallatin, Tennessee.

2.      Upon information and belief, Defendant Gailon Hodges (hereinafter referred to as Defendant) is an adult resident and citizen of the State of Tennessee.  Defendant is employed as an officer with the Gallatin Police Department in Gallatin, Tennessee.  At all times, Defendant was acting within the scope and course of his employment and under the color of law.  Service of

process of this Complaint may be served upon city attorney of Gallatin who has agreed to accept waiver of service of summons forms and to execute and return or direct service of summons upon Defendant.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this matter under 28 U.S.C. § 1331 with this Complaint arising under a violation of rights conferred by the Constitution of the United States of America.

4.      Jurisdiction of this Court is invoked under 28 U.S.C. § 1343(a)(3) because this action seeks redress for a deprivation, under color of state law, of rights secured to Plaintiff by the Fourth Amendment to the Constitution of the United States of America.

5.      Plaintiff asserts claims for relief under 42 U.S.C. § 1983, which authorizes action to redress the deprivation, under color of state law, of rights, privileges, or immunities secured to Plaintiff by the Constitution or laws of the United States of America and 42 U.S.C. § 1988, which authorizes the award of attorney's fees and costs to prevailing plaintiffs in actions brought under 42 U.S.C. § 1983.

6.      This Court is a proper venue for this action pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(2) because one or more Defendant(s) reside in this judicial district. Additionally, a substantial part of the events or omissions giving rise to this claim occurred within this judicial district.

7.      The Court may award damages and grant declaratory and injunctive relief for constitutional violations pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 2201, Federal Rules of Civil Procedure 57 and 65.

## STATEMENT OF FACTS

8.      At all times relevant to this Complaint, Defendant was acting under the color of law.

9.      On June 12, 2025, Defendant initiated a traffic stop of Plaintiff for allegedly "fail[ing] to maintain lane in the area of Highway 386 W just past Exit 12 in Gallatin, Tn." This is a statement Defendant drafted in his sworn affidavit. That document is captioned as "Affidavit."

10.      Defendant inquired of Plaintiff as to any medications that he had been prescribed and had taken.

11.      Plaintiff responded that he was prescribed Ritalin and he takes it as prescribed.

12.      Defendant inquired of Plaintiff about any alcohol consumption.

13.      Plaintiff denied consuming any alcohol on that day being June 12, 2025.

14.      Defendant alleges that he observed Plaintiff having "noticeably constricted pupils in both eyes."

15.      Plaintiff stated to Plaintiff that he had eye allergies and this may or may not have been captured on body camera video due to the loud noise coming from highway traffic.

16.      Defendant drafted and stated the subject matter of paragraphs 10-14 in his affidavit referenced above. The same document is also drafted on another page captioned as "arrest narrative."

17.      Defendant asked Plaintiff to consent to perform field sobriety tests. Plaintiff consented and performed them as instructed.

18.      Defendant conducted the field sobriety tests and stated in his affidavit (also another draft captioned as "Arrest narrative" the following results or clues as he perceived them to which Plaintiff does not admit to herein:

3

a. HGN: No clues observed

b. Walk and turn:

    i. Instruction phase: Came out of starting position

    ii. Walking phase: Stepped off line

    iii. Used arms for balance

    iv. Improper turn

    v. Stopped While Walking

    vi. Missed Heel-to-bill

    vii. Incorrect number of steps

c. One leg stand:

    i. Used arms for balance

    ii. Swayed from side to side

19. Defendant further drafted and stated in his affidavit that "for the facts mentioned above Mr. Saylors was placed into custody and transported to the Sumner Regional Lab for a blood draw, Mr. Saylors was then transported to the Sumner County Sheriffs Office Jail for booking without incident, Mr. Saylors was given a court date of Wednesday June 23, 2025 at 10:00 in the Sumner County General Sessions Court."

20. Plaintiff had consented to a blood draw for chemical testing.

21. Defendant charged Plaintiff with driving under the influence (first offense) pursuant to TCA 55-10-401 and failing to maintain lane pursuant to TCA 55-8-123.

22. Defendant drafted another document captioned as a field arrest report. This document contains observations by Defendant not stated in the affidavit. Defendant stated the following in this document:

4

a. "three prescritpions were located inside the vehicle: Methylphendiate (Generic for Ritalin) Clonidine HCI Astrozole"

b. "Secondary Simple dived Attention Tasks were also administered, the two tasks were as follows: Counting; I asked Mr. Saylors to count backwards from the number 68 to the number 43 he performed as follows:……."

23. Defendant completed an "affidavit of complaint" on June 12, 2025 which was signed by a judge or magistrate.

24. The affidavit of complaint facially appears to also be a post arrest warrant establishing probable cause and stating legal command to arrest Plaintiff. The affidavit of complaint states that the magistrate executed the document establishing probable cause based upon Defendant's sworn statements. This commenced formal legal process against Plaintiff by Defendant. The document is either a post arrest warrant or has the effect of an arrest warrant.

25. Plaintiff stated to Defendant he had recently broken his foot.

26. Plaintiff volunteered early in the interaction to perform a breathalyzer test and/or blood draw prior to Defendant ever requesting it.

27. Defendant asked Plaintiff if he agreed that the road was flat to perform the field sobriety tests. Plaintiff responded that the road slanted to the right and demonstrated that with a hand gesture.

28. Plaintiff was experiencing pain in the hip and leg area at the beginning of the walk and turn test and throughout remainder of the tests.

29. Plaintiff further demonstrates leg and hip pain after the turn and walking back towards Defendant's patrol car. Plaintiff verbally states the fact of the pain and other stability issues.

5

30.    Plaintiff had been sedentary for a number of months from the foot injury and had not regained consistent center of balance and was contending muscle atrophy in his leg.

31.    Throughout the tests, Plaintiff did not slur any speech or misunderstand any of Defendant's instructions and/or statements other than asking for clarification about the tests. Defendant not state any facts to contradict this in his affidavit.

32.    Plaintiff verbally communicated to Defendant that he was "super stressed out because I have not done anything…..and my legs are shaking."

33.    Plaintiff avers that the test was not performed as it should have been arising out of these facts and the same stated above.

34.    Plaintiff verbally communicated to Defendant that he was 350 pounds contributing to his difficulty with the tests.

35.    Plaintiff initially began the one-legged stand on his left foot which he had previously broken and was not able to perform it as instructed.

36.    Defendant permitted Plaintiff to start over and begin standing on his right foot which he performed without issue or no clues. Defendant instructed Plaintiff to stop and stated "much better on that leg."

37.    Defendant instructed Plaintiff to count backwards from the number 68 to 43. Plaintiff missed the number 66 and ended at 42.  Plaintiff had sufficiently and adequately performed this test and any reasonable person might miss a number or end at the wrong number sequentially by one digit.  Defendant did not include this part of the test in his affidavit or narrative but it is in the arrest report.

38.    Defendant instructed Plaintiff to perform a test where he closes his eyes and tilts back and to do that for a period of 30 seconds as perceived by Plaintiff.  Plaintiff in the body

camera video clearly tilts his head with eyes closed at 12:46:21 time stamp as indicated on the body camera video time and date stamp and ended at 12:46:38. Plaintiff was suffering extreme anxiety and stress and Defendant was aware that Plaintiff was prescribed Ritalin and thus had actual knowledge of the medical condition for which such medication was for. Thus, Defendant was aware of medical conditions that could contribute to Plaintiff's performance of this test.

39. Plaintiff complied with Defendant's instructions during period being handcuffed and did not resist in any manner.

40. Plaintiff was compliant and respectful throughout the entire encounter with Defendant.

41. Defendant read the law to Plaintiff aloud regarding implied consent and did not demonstrate any issues with comprehension.

42. Plaintiff communicated with Defendant after the arrest and did not demonstrate any evidence of being under the influence. Plaintiff did not demonstrate any evidence of slurred speech, lack of comprehension, or any other clues that would be evidence of being under the influence.

43. Specifically, Plaintiff coherently discussed the issue of a guitar in his vehicle that required protection due to temperature and what kind of material the guitar was made of. Defendant communicated with Plaintiff about the guitar and that efforts would be made to protect it regarding temperature control issues.

44. Plaintiff did not present numerous other clues or evidence typical of being under the influence.

7

45. Plaintiff did not demonstrate any evidence of being under the influence at Sumner Regional Medical Center while having his blood drawn. Defendant did not state any evidence of being under the influence while at the hospital in his reports.

46. Plaintiff's chemical testing results for both alcohol and toxicology came back with negative results for any illegal substances demonstrating that Plaintiff was not under the influence.

47. Plaintiff had pulled over immediately as instructed upon Defendant initiating his lights on the patrol car. Plaintiff comprehended the situation and complied without issue.

48. Defendant's patrol car dash camera video demonstrates that Plaintiff failed to maintain a lane one time.

49. Defendant officer does state in his case report that Mr. Saylors' eyes were constricted. Ritalin is listed as a CNS Stimulant used to treat ADHD and narcolepsy by increasing focus and reducing impulsivity, promoting alertness. Based upon the NHTSA Impaired Driving training programs, the pupil size associated with a CNS Stimulant is Dilated. The officer does not state the pupil size expected measurement in the lighting conditions present at the time of traffic stop.

50. Plaintiff exited the vehicle at the request of the officer with no apparent problems or difficulty. He is obviously overweight.

51. Defendant does not state in his case report as he spoke to and contacted Plaintiff, that he noticed any odor of drugs or alcohol.

52. Defendant did not state in his reports or statements or during the traffic stop that he observed any evidence of Plaintiff having bloodshot or glassy eyes.

53. Plaintiff avers that Defendant falsely concluded in his statements and reports that Plaintiff exhibited 6 out of 8 Walk and Turn test clues.

8

54. Plaintiff avers that there were only five out of 8 Walk and Turn test clues.

55. The body camera video demonstrates that there was heavy congestion of traffic going by at a high rate of speed during the field sobriety tests particularly the Walk and Turn tests. This can affect stability and performance of this test. Defendant failed to properly consider these facts.

56. Plaintiff's weight and medical conditions with his foot and other ailments affect the performance of the Walk and Turn test. Defendant failed to properly consider these facts.

57. Defendant had a second officer on scene as back up. Defendant should have relocated Plaintiff to another location that was more proper and conducive for conducting the field sobriety tests particularly tests for balance and coordination. The second officer literally was standing in the right lane of traffic during the testing.

58. Defendant failed to consider interference of the emergency lights in Plaintiff's field of vision and the passing traffic in close proximity was a possible factor in Plaintiff's performance of the one-legged stand.

59. Defendant failed to consider that Plaintiff who has trouble focusing and dividing attention and takes medication for it would not consider "any" type of divided attention test simple. This is in reference to the secondary divided attention tests, number counting, and modified Romberg test.

60. There is no scientific study that correlates drug impairment with tilting one's head back and counting to thirty. Defendant improperly considered the same.

61. Defendant first administered the Horizontal Gaze Nystagmus (HGN) test, which is generally regarded as the most scientifically reliable of the standardized field sobriety tests when properly administered. It measures involuntary eye jerking (nystagmus) which becomes more

9

pronounced if the subject is under the influence of alcohol. Defendant stated there were "no clues" in his affidavit.

62. Defendant did not have any evidence of impairment while on scene to determine that Plaintiff was driving under the influence.

63. The facts readily available to Defendant would not have led any reasonable officer to believe that Plaintiff was "under the influence" as defined by TCA 55-10-401.

64. Defendant's decision to arrest Plaintiff for driving under the influence as charged and referenced above was not supported by probable cause.

65. Plaintiff was booked at the Sumner County Jail including finger printing which are now part of national and state criminal data base systems.

66. Plaintiff had his mug shot taken and was produced online for the public to view. The mug shot is online presently at https://bustednewspaper.com/search/David+saylors/

67. The mug shot was published immediately or shortly after the June 12, 2025 date of arrest and has been online for nearly twelve months.

68. Plaintiff was in custody at the Sumner County Jail for several or more hours prior to bonding out.

69. Plaintiff suffered economic damages as he was on his to way to a job interview at the time of arrest. Plaintiff also failed to secure more prosperous employment for specific positions of employment he applied for due to his arrest. Plaintiff's present employer stated that the arrest was a determinative factor in not being employed for that position because the position involved transportation during the scope of employment.

70. Plaintiff's employer is a privately owned ballroom dance company with locations in middle Tennessee.

71. Plaintiff has worked for his employer since 2016 advancing to a management role in 2018. Plaintiff was furloughed by his employer during the Covid epidemic. Plaintiff accepted a full-time "Customer success manager" position in the technology field while working part time or intermittently on an as needed basis for his present employer.

72. In December 2024, Plaintiff's present employer attempted to employ him full time in the previous managerial role. This was paused or short-lived due to Plaintiff breaking his left foot in January 2025.

73. Plaintiff's employment as a "Customer success manager" was terminated or laid off without cause.

74. Plaintiff's present employer communicated with him about a full-time managerial role in early June 2025. Plaintiff was preparing to confer with his present employer on June 12, 2025 about the position and compensation. Plaintiff was arrested on June 12, 2025 as stated above.

75. Plaintiff's false arrest prevented him from attending the meeting and lost the opportunity. The position was rescinded and filled by another applicant. The position required a clean driving record and reliable vehicle to host and transport VIP guests which was not possible due to Plaintiff's possible license suspension if there would have been a conviction. This was certainly not possible with a temporary limited or restricted license and an interlock device after a possible conviction. This was not appropriate for driving around guests or other employees. The employer rescinded the employment opportunity specifically because of this false arrest and its possible consequences.

76. Plaintiff's toxicology reports did not return until after the employment position was rescinded. The charges referenced above were not dismissed until August 26, 2025 also after such employment position was rescinded.

77. Plaintiff had to continue searching for full time employment while working intermittently or part time for his present employer.

78. Plaintiff accepted a non-managerial position paying much less with his present employer on August 11, 2025. The position salary is approximately $35,000.00 base plus commissions. The position pays significantly less than the approximately $90,000.00 salary that was the salary for the managerial position. The approximate loss of income arising from the false arrest is estimated between $40,000.00 to $50,000.00 per year.

79. The two locations in middle Tennessee that his present employer has have two management positions each which are "new student department manager" and "advanced student department manager." These positions rarely become available as the positions remain filled for often 15 years or more.

80. Plaintiff had applied for a number of other positions that were more likely than not offered to him due to the false arrest by Defendant.

81. There was a noticeable lack of response by employers regarding employment applications after June 12, 2025.

82. Plaintiff had to look at a different career paths for a period of time.

83. On or about August 26, 2025, the charges against Plaintiff for driving under the influence (first offense) pursuant to TCA 55-10-401 and failing to maintain lane pursuant to TCA 55-8-123 were dismissed. This constitutes a favorable outcome or disposition for Plaintiff pursuant to Heck v. Humphrey, 512 U.S. 477 (1994).

## COUNT 1

## UNLAWFUL ARREST IN VIOLATION OF FOURTH AMENDMENT

## 42 U.S.C. § 1983

84. Plaintiff restates and incorporates by reference herein the allegations averments in the above paragraphs as if specifically set out.

85. Plaintiff has a constitutional right to be free from unlawful searches, seizures, and arrest without probable cause.

86. Defendant's acts were conducted without legal justification or probable cause and such acts are unlawful and a violation of each and every Plaintiff's Fourth Amendment Rights.

87. At the time of the arrest, Plaintiff did not exhibit any objective indicators of intoxication.

88. Defendant lacked any specific articulable facts to reasonably believe that Plaintiff was under the influence of alcohol or any controlled substance.

89. Defendant did not observe or state in his affidavit that there was any odor of alcohol, intoxicants, or narcotics on Plaintiff or in his vehicle.

90. There was no presence or odor of alcohol, intoxicants, or narcotics to indicate that Plaintiff was under the influence of the same.

91. Defendant also failed to consider Plaintiff's age, medical conditions, and environmental factors which are required under established field sobriety testing protocols.

92. Defendant was acting under the color of State law while arresting Plaintiff.

93. Defendant's detention, seizure, and arrest of Plaintiff deprived Plaintiff of his liberty.

94. Defendant's detention, seizure, and arrest of Plaintiff was in reckless disregard of Plaintiff's rights.

95. At all times, Plaintiff enjoyed reasonable right to and expectation of privacy of his person and personal effects. Plaintiff's vehicle was searched, seized, and towed without reasonable suspicion or probable cause.

96. Defendant's detention, seizure, and arrest of Plaintiff was without reasonable suspicion and/or probable cause for the charges of driving under the influence (first offense) pursuant to TCA 55-10-401 and failing to maintain lane pursuant to TCA 55-8-123 and/or any other criminal offense.

97. On or about August 26, 2025, the charges against Plaintiff for driving under the influence (first offense) pursuant to TCA 55-10-401 and failing to maintain lane pursuant to TCA 55-8-123 were dismissed. This constitutes a favorable outcome or disposition for Plaintiff pursuant to Heck v. Humphrey, 512 U.S. 477 (1994).

98. Defendant's conduct as averred herein violated Plaintiff's clearly established right to be free from arrest without probable cause as guaranteed by the Fourth Amendment.

99. As a direct and proximate result of the false arrest, acts, misconduct, and/or omissions on the part of Defendant, Plaintiff suffered emotional distress, reputational harm, public embarrassment, economic damages, and other damages as identified below.

100. Defendant did not have probable cause to arrest Plaintiff for any criminal conduct charged or not charged.

101. The affidavit of arrest as completed by Defendant failed to state sufficient evidence to support probable cause for arresting Plaintiff. There were sufficient omissions as to exculpatory evidence or conditions for improper field sobriety tests.

14

# COUNT 2

## MALICIOUS PROSECUTION

### 42 U.S.C. § 1983

102.    Plaintiff restates and incorporates by reference herein the allegations averments in the above paragraphs as if specifically set out.

103.    After arresting Plaintiff on June 12, 2025, Defendant on this date immediately completed an affidavit of complaint before the Sumner County General Sessions Court or such other legal body initiating the prosecution of Plaintiff for driving under the influence (first offense) pursuant to TCA 55-10-401 and failing to maintain lane pursuant to TCA 55-8-123. This commenced formal legal process.

104.    The affidavit of arrest as completed by Defendant failed to state sufficient evidence to support probable cause for arresting Plaintiff. There were sufficient omissions as to exculpatory evidence or conditions for improper field sobriety tests.

105.    Defendant did not observe or state in his affidavit that there was any odor of alcohol, intoxicants, or narcotics on Plaintiff or in his vehicle.

106.    At the time of Plaintiff's arrest by Defendant, there was no presence or odor of alcohol, intoxicants, or narcotics to indicate that Plaintiff was under the influence of the same.

107.    The affidavit of complaint was materially false, misleading, incomplete, and was presented to a judicial commissioner or magistrate to obtain approval for Plaintiff's arrest and prosecution.

108.    Relying on the false, misleading, and/or incomplete affidavit, a judicial commissioner or magistrate found probable cause and issued a warrant charging Plaintiff for

violations of driving under the influence (first offense) pursuant to TCA 55-10-401 and failing to maintain lane pursuant to TCA 55-8-123.

109. Without Defendant's false, misleading, and/or incomplete statements, such affidavit of complaint lacks probable cause.

110. Defendant's affidavit of complaint lacks probable cause.

111. Defendant's statements and/or omissions were knowingly false or were made with reckless disregard for the truth and for Plaintiff's constitutional rights.

112. No reliable evidence supported the initiation of criminal charges against Plaintiff.

113. The TBI's Official Alcohol Report and Official Toxicology Report later confirmed that Plaintiff had no alcohol or controlled substances in his system at the time of his arrest.

114. As a result of the charge, Plaintiff was detained in the Sumner County Jail for several or more hours.

115. On or about August 26, 2025, the charges against Plaintiff for driving under the influence (first offense) pursuant to TCA 55-10-401 and failing to maintain lane pursuant to TCA 55-8-123 were dismissed. This constitutes a favorable outcome or disposition for Plaintiff pursuant to Heck v. Humphrey, 512 U.S. 477 (1994).

116. As a direct and proximate result of the malicious prosecutions, false arrest, acts, misconduct, and/or omissions on the part of Defendant, Plaintiff suffered emotional distress, reputational harm, public embarrassment, economic damages, and other damages as identified below.

117. Defendant's conduct deprived Plaintiff of his right to be free from prosecution without probable cause in violation of the Fourth Amendment to the United States Constitution.

118.    The actions of Defendant were willful, wanton, and in reckless disregard of Plaintiff's rights, entitling him to compensatory damages, punitive damages, and attorney's fees under 42 U.S.C. § 1988.

### INJURIES AND DAMAGES

119.    Plaintiff restates and incorporates by reference herein the allegations averments in the above paragraphs as if specifically set out.

120.    Plaintiff seeks recovery of the damages sustained as a direct and proximate result of one or all of the aforesaid acts and/or omissions of the Defendant which include but are not limited to:

    a.    Physical pain and mental/emotional distress referenced herein both past and future;

    b.    Economic damages;

    c.    Inability to enjoy the normal pleasures of life both past and future;

    d.    Such other emotional harm including fright, shame, and mortification from the indignity and disgrace, consequent upon such an illegal detention, search, seizure, arrest, and prosecution.

    e.    Nominal damages;

    f.    Such other damages permitted by federal and/or state law;

    g.    Punitive damages against Defendant based upon his intentional and reckless conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1.      Process be issued and that each Defendant be required to respond within the time provided by the Federal Rules of Civil Procedure;

2.      Declaratory judgment or such other declaration be entered by this Court that the detention and arrest of Plaintiff without probable cause was unlawful;

3.      Compensatory damages with pre and post judgment interest to Plaintiff due to Defendant's unlawful actions in an amount not less than $300,000.00 or to be determined;

4.      Punitive damages to Plaintiff in an amount to be determined;

5.      Award to Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees, costs, and expenses;

6.      Attorney's fees pursuant to Fed. R. Civ. P. 54, 42 U.S.C. § 1988, and/or any other applicable rule or law;

7.      Such other and further legal or equitable relief to which Plaintiff may be entitled as the Court deems proper and/or under such other statutory or common law;

8.      That a jury of Plaintiff's peers be empaneled to try the issues raised in this cause;

Drafted and respectfully submitted by,

/s/Roland Mumford
Roland Mumford BPR 026495
Law Offices of Roland Mumford
242 West Main Street, No. 223
Hendersonville, TN 37075
Phone: 615.348.0070
Fax: 614.246.4110
Email: roland@mumfordlaw.net
Attorney for Plaintiff